IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                    Criminal No. 1:14cr5-HSO-JCG
                                      Civil No. 1:18cv249-HSO

**DONTRELLE DESHAUN SANFORD**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT DONTRELLE DESHAUN SANFORD'S MOTION [79] TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255

BEFORE THE COURT is Defendant Dontrelle Deshaun Sanford's Motion [79] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. After due consideration of the Motion, the record, and relevant legal authority, the Court finds that Sanford's Motion [79] is not well taken and should be denied without an evidentiary hearing.

### I. FACTS AND PROCEDURAL HISTORY

Defendant Dontrelle Deshaun Sanford ("Sanford") was charged in two counts of an Indictment [3] filed in this case on February 5, 2014. Sanford was charged with: (1) conspiracy to commit offenses against the United States involving passing, uttering, publishing, selling, keeping in his possession, and concealing falsely made, forged and counterfeit obligations of the United States, that is, Federal Reserve Notes, in violation of Title 18, United States Code, Section 472; and (2) committing

offenses against the United States by conducting and attempting to conduct financial transactions involving the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i). Indictment [3] at 1, 9. On August 19, 2014, Sanford entered a guilty plea to the second count, pursuant to a Plea Agreement [45] and Plea Supplement [46]. Min. Entry, Aug. 14, 2014. The Court sentenced Sanford on November 20, 2014, to a term of seven months imprisonment; three years of supervised release including six months home confinement with electronic monitoring; $10,213.02 in restitution, owed jointly and severally with his co-defendant; a $2,000.00 fine; and a $100.00 special assessment. Min. Entry, Nov. 20, 2014. Count One was dismissed as to Sanford on a motion by the Government. *Id.* Judgment was entered on November 24, 2014. J. [57]. Sanford did not appeal.

Sanford's supervised released commenced on August 6, 2015. Pet. on Supervised Release [59] at 1. On January 4, 2017, the Court granted a modification of Sanford's conditions of supervised release after he failed to return home at his scheduled curfew on December 25, 2015, while participating in U.S. Probation's Electronic Monitoring Program. *Id.* The modification required Sanford to complete 40 hours of community service by March 1, 2016, and provide the U.S. Probation Office with proof of completion. *Id.* On January 13, 2017, the Court granted a second modification of Sanford's conditions of supervised release after he left the judicial district without notifying his probation officer; failed to maintain employment; failed to pay his fine and restitution; and failed to report to the

probation office when requested.  Pet. on Supervised Release [60] at 1.  Sanford agreed to add a search condition to the terms of his supervised release and to be placed on 60-day random reporting through a code-a-phone system.  *Id.*

On June 19, 2017, a warrant was issued for Sanford for violating the terms of his supervised release and he was arrested on June 27, 2017, in the District of Utah.  Order [61].  At his revocation hearing held on July 21, 2017, Sanford was represented by Attorney John W. Weber, III ("Weber").  Order Appointing Public Defender [64].  Sanford admitted to four of eleven alleged violations of supervision.  Tr. [75] at 13.  One of the admitted violations was a Grade B violation for forgery.  *Id.* at 9, 12, 36.  The Government presented evidence on the remaining violations, *id.* at 13-28, and Weber attempted to rebut this evidence with Sanford's own testimony, *id.* at 28-39.

At the conclusion of the hearing, the Court found by a preponderance of the evidence that Sanford had violated the terms and conditions of his supervised release in that he: committed forgery; possessed stolen property; resisted arrest; provided a false name to law enforcement; possessed the driver's license of another individual; drove a motor vehicle with a suspended license; failed to give his name to law enforcement; sped; drove with a canceled license; supplied the police with an alternate identification; and failed to report an interaction with the police to the United States Probation Office.  *Id.* at 13, 40-44.  The Court based this finding on the Government's proffered evidence and on Sanford's lack of credibility based upon his answers and testimony.  *Id.* at 44.

Based upon his original criminal history category of III, Sanford's Guidelines imprisonment range for these violations was eight to fourteen months because his most serious violation was a Grade B violation. *Id.* at 45. Sanford's supervised release was revoked for violating the conditions of release and the Court sentenced him to 14 months imprisonment; 22 months of supervised release; and a six month placement in a residential reentry center. Min. Entry, July 21, 2017; J. on Revocation [69]. The Court made clear that Sanford's supervised release would have been revoked in the Court's discretion even if the violations did not mandate that result. *Id.* at 50. This was due to the nature of the conduct, Sanford's history on supervision, and the similarity of the violations to the underlying offense. Tr. [75] at 45.

On August 3, 2017, Sanford appealed the revocation of his supervised release. Notice of Appeal [73]. The Fifth Circuit dismissed this appeal pursuant to Federal Rule of Appellate Procedure 42 on September 13, 2017. *United States v. Sanford*, No. 17-60545, Doc. 00514153782 at 1 (5th Cir. 2017).

On July 19, 2018, Sanford timely filed the present Motion [79] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. Sanford requests that supervised release be reinstated as if he had never been revoked from supervised release. Mot. to Vacate [79] at 13. He asks that he be resentenced to time served and that his term of supervised release be terminated. *Id.* Under the original terms of Sanford's supervised release, he would have completed his term of supervision in August 2018. *Id.* Sanford advances the

following grounds in support of his Motion: (1) his counsel failed to adequately prepare for the revocation hearing and failed to investigate the evidence surrounding Sanford's arrest; and (2) his counsel failed to file and prosecute an appeal. *Id.* at 5, 7. Sanford's former counsel, John Weber, has filed an Affidavit, Aff. of John W. Weber, III, and the Government has responded to Sanford's Motion, Resp. in Opp'n [83].

## II. DISCUSSION

A. Legal standard

Once finally convicted, there are four narrow and separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992). "[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)). Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32. Relief under § 2255 is therefore reserved for violations of constitutional rights and for a narrow range of injuries which could not

have been raised on direct appeal which, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

Sanford contends he received ineffective assistance of counsel. Mot. to Vacate [79] at 5, 7. Claims of ineffective assistance of counsel may generally be heard under a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To demonstrate ineffective assistance of counsel, Sanford must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Failure to establish either prong defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). However, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

When considering whether counsel provided ineffective assistance, the Court must presume that "counsel's conduct f[ell] within the wide range of reasonable professional assistance . . . ," and a defendant must overcome that presumption. *Strickland*, 466 U.S. at 689. To demonstrate "prejudice" in the *Strickland* sense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

B.  Sanford has not met his burden of establishing a claim of ineffective assistance of counsel.

1.  Weber's failure to prepare and investigate

Sanford asserts that he was denied effective assistance of counsel when Weber failed to adequately prepare for the revocation hearing. Mot. to Vacate [79] at 5. According to Sanford, Weber only met with Sanford once and failed to investigate or obtain evidence necessary to show that the arresting officer's actions were unconstitutional. *Id.* Specifically, Sanford contends that Weber failed to obtain or review the officer's body surveillance recording or the security surveillance recordings from the store where the search and seizure occurred. *Id.* Had Weber reviewed the video, Sanford posits that it would have shown that the officer forcibly removed Sanford from the vehicle prior to notifying him of the arrest and illegally searched the vehicle without probable cause or consent. *Id.* Sanford argues that without the evidence obtained from the unlawful stop, there would be no evidence to support the revocation. *Id.*

a.  Weber's preparation and investigation was objectively reasonable.

It is clear that counsel has a duty to make reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 691. In assessing whether counsel's investigation was unreasonable, a heavy measure of deference must be afforded to counsel's judgments. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *id.*). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would

have altered the outcome of the trial." *Id.*

Weber asserts that he did not investigate a violation of Sanford's Fourth Amendment rights because there was no evidence of a violation and even if there had been it would not have been beneficial to investigate because the exclusionary rule does not apply to revocation hearings, absent harassment. Aff. of John W. Weber [82] at 3. These were reasonable judgments as the requested investigation was not supported by the record and the even if it had been, it would not have assisted Sanford by excluding the evidence from the hearing. *See United States v. Roberson*, 496 F. App'x 390, 395 (5th Cir. 2012) (holding that the exclusionary rule does not apply to revocation hearings absent police harassment); *see generally* Mot. to Vacate [79] (failing to allege police harassment).

As for Sanford's allegation that Weber failed to adequately prepare, Weber states that he was well prepared for the hearing and would have requested an extension had this not been the case. Aff. of John W. Weber [82] at 2. In terms of his preparation, Weber asserts that he determined that the best defense "in counsel's opinion was to provide a reasonable explanation to the court for the items found in Mr. Sanford's possession," and that "[t]he best person to provide this explanation was Mr. Sanford." *Id.* at 2-3. Although Sanford elected to testify, the Court did not accept Sanford's explanation. *Id.* at 50. Weber's defense strategy in this case falls, in the Court's view, "within the wide range of reasonable professional assistance," and Sanford has not provided sufficient justification to overcome that presumption. *See Strickland*, 466 U.S. at 689.

b. <u>Sanford has not shown that Weber's alleged failure to prepare and investigate was prejudicial.</u>

The exclusionary rule does not apply to supervised release revocation hearings absent police harassment. *Roberson*, 496 F. App'x at 395 (citing *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992)). Sanford has not alleged, and there is no evidence of, police harassment in this case. Thus, even if Weber had found that the underlying evidence was obtained through an illegal search and seizure in violation of the Fourth Amendment, the remedy would not have been exclusion of the evidence. The evidence would have remained in the record, and thus, it would not have altered the outcome of the hearing. Therefore, Sanford has not carried his burden of showing that Weber's alleged failure to investigate was prejudicial, a necessary component of an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687-88. Furthermore, even had Weber prepared or investigated further, the Court would still have revoked Sanford's supervised release.

The United States Sentencing Guidelines provide for the classification of violations of the conditions of probation and supervised release. The three grades of violations are as follows:

> (1) Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;
> (2) Grade B Violations--conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

> (3) Grade C Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S. Sentencing Guidelines Manual § 7B1.1(a).

The Sentencing Guidelines further provide that

> [w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.

U.S. Sentencing Guidelines Manual § 7B1.1(b). "Upon finding of a Grade A or B violation, the Court *shall* revoke probation or supervised release." U.S. Sentencing Guidelines Manual § 1.3(a)(1) (emphasis added). At that point, "the applicable range of imprisonment is that set forth in § 7B1.4." *Id.*

Sanford does not advance an argument that forgery was not a Grade B violation. Sanford's conduct in committing forgery, to which he admitted under oath at the hearing and which the Court found was supported by a preponderance of the evidence, constituted a Grade B violation. The Court was required to revoke supervised release following this admission, and Sanford's Guidelines sentencing range would not have changed. Thus, even if Weber's assistance was ineffective, Sanford's admission to committing a Grade B violation necessitated the revocation of his supervised release, and thus, Sanford suffered no prejudice.

In summary, Sanford has failed to demonstrate either prong of the *Strickland* standard as to his first asserted ground for relief.

2. <u>Weber's failure to file and prosecute an appeal</u>

Sanford alleges that he was denied effective assistance of counsel because Weber failed to file and prosecute an appeal of his revocation. Mot. to Vacate [79] at 7. He states that at the revocation hearing the Government presented unreliable evidence in the form of summary testimony by the probation officer, that the focus of the underlying citation and police report was a different individual named Darnelle Sanford, and that the State of Utah dropped the underlying charge because the evidence was unlawfully obtained and unreliable. *Id.* Sanford maintains that Weber should have advised him that the law remained unsettled on the degree of reliability required for a revocation and the extent to which hearsay evidence is admissible at such a hearing. *Id.* Had counsel done so, Sanford states that he could have appealed pursuant to *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004).

The claim that Weber failed to file and prosecute an appeal is plainly without merit. On August 2, 2017, Sanford alerted Weber of his desire to appeal the revocation based on ineffective assistance of counsel. Aff. of John W. Weber, III [82] at 2. Weber filed a Motion [70] to Withdraw as Attorney and a Notice of Appeal [71], on August 3, 2017. The Motion to Withdraw asserted that Sanford was alleging ineffective assistance of counsel by Weber and that Sanford had stated that he would retain new counsel to pursue his appeal. Mot. to Withdraw as Att'y [70] at 1. Therefore, Weber did file an appeal and any failure to prosecute that appeal was based on Sanford's representation that he would secure alternative counsel. *Id.* It

is also worth noting that Sanford also requested Weber be removed as his counsel in a Motion filed August 22, 2017. Mot. to Appoint Counsel, Mot. to Remove John Weber as Att'y [76]. There is nothing in the record to suggest that Weber was ineffective by failing to file and prosecute an appeal.

Sanford also asserts that Weber was ineffective for failing to develop the record at the revocation hearing in order to permit Sanford to advance additional arguments on appeal. Mot. to Vacate [79] at 7. It seems that Sanford bases this claim upon Weber's failure to raise objections at the revocation hearing to the probation officer's testimony, to the underlying citation and police report using the name Darnelle Sanford, and regarding the State of Utah dropping the underlying charge, thereby waiving these objections on appeal. *See Reinhart*, 357 F.3d at 530.

As noted above, Sanford had already admitted to a Grade B violation, and therefore was subject to a mandatory revocation of his supervised release. Tr. [75] at 9-10. Even if Weber had developed the record further, the Court was required to revoke Sanford's release and raising these additional arguments on appeal would not have altered this outcome. *See* U.S. Sentencing Guidelines Manual § 7B1.3(a)(1). Further, Sanford had the opportunity on appeal to make the argument that Weber failed to adequately develop the record. He was appointed new counsel to represent him in his appeal and to assist him in raising this objection. *See* Order [77]. Any failure to raise these issues on appeal or to inform Sanford that they could be raised on appeal does not rise to the level of ineffective assistance of counsel within the meaning of *Strickland*.

Sanford has failed to demonstrate prejudice on his second ground for relief.

### III. EVIDENTIARY HEARING

The Court finds that an evidentiary hearing is not required. A defendant is only entitled to an evidentiary hearing on a § 2255 motion if he has presented "independent indicia of the likely merit of [his] allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted). Because Sanford has failed to do so and his showing is "inconsistent with the bulk of [his] conduct [and he] fails to meet [his] burden of proof in light of [the] evidence in the record, an evidentiary hearing is unnecessary." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

### IV. CONCLUSION

Because the Motion, files, and records conclusively show that Sanford is entitled to no relief, the Court finds that Sanford's Motion [79] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Dontrelle Deshaun Sanford's Motion [79] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to § 2255, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of January, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE